UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

J.L., et al.,

          Plaintiff(s),

  v.

MERCER ISLAND SCHOOL DISTRICT,

          Defendant(s).

NO. C06-494MJP

ORDER ON MOTION FOR JUDGMENT

The above-entitled Court, having received and reviewed:

1. Notice of Administrative Decision (Dkt. No. 48)

2. Plaintiffs' Motion for Judgment (Dkt. No. 49)

3. Defendant's Response (Dkt. No. 50)

4. Plaintiffs' Reply (Dkt. No. 51)

all exhibits and declarations attached thereto, and the transcripts and records of this case, makes the following ruling:

IT IS ORDERED that judgment shall be entered for Plaintiffs in the following fashion:

1. The Landmark School placement is declared to be an appropriate placement for the minor student K.L.

2. Reimbursement for the minor student's 10th and 11th grade years shall be awarded in the form of the costs of her 10th and 11th grade enrollment (including residential costs) at Landmark; the Court declines to offset this amount as ordered by the Administrative Law Judge.

3. Compensatory educational relief shall be awarded in the form of payment of the minor student's 12th grade enrollment (including residential costs) at Landmark.

ORDER ON
MTN FOR JMT - 1

**Background**

Parents of the minor student K.L. ("Parents") initiated this action as an appeal from a decision of the Administrative Law Judge ("ALJ") denying their request for reimbursement of the cost of their child's private school placement. Parents had unilaterally enrolled their daughter in the Landmark School in the belief that Defendant Mercer Island School District ("the District" or "MISD") was not providing K.L. (who suffers from severe learning disabilities) with an adequate education.

On December 8, 2006, the Court issued an order (Dkt. No. 47) remanding this dispute to the ALJ with instructions to issue new findings of fact and conclusions of law in conformance with the findings that MISD (1) had failed to provide K.L. with a free and appropriate public education ("FAPE") as mandated by federal law and (2) had issued individual educational plans ("IEPs") which were inadequate to attain the requirements of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq. and 34 CFR Part 300 et seq.

On May 25, 2007, the ALJ issued her Findings of Fact, Conclusions of Law, and Order on Remand. Dkt. No. 48. She concluded that K.L.'s placement at the Landmark School (a private, residential facility in Massachusetts specializing in learning-disabled education) was appropriate. Id., Conclusions of Law, ¶ 8, For the presentation of inadequate IEPs and the denial of a FAPE in K.L.'s 10th and 11th grade years, the ALJ awarded Parents reimbursement for the cost of K.L.'s 10th and 11th grade enrollment (including residential costs) at Landmark. Id., ¶ 11. However, that award was reduced by the cost of 7 months' enrollment as an offset, based on the ALJ's conclusion that Parents had unreasonably delayed the District's evaluation of K.L. prior to her 10th grade year. Id., ¶ 15. On the issue of "compensatory education," the ALJ awarded Parents the cost of K.L.'s enrollment at Landmark for her 12th grade year based on the denial of a FAPE in the minor student's 8th and 9th grade years. Id., ¶ 20.

**ORDER ON
MTN FOR JMT - 2**

**Discussion**

Landmark School was an appropriate placement for K.L.

The District argues that, based on K.L.'s standardized test scores since enrolling at Landmark, she has made no improvement and no progress towards "independence," without which the placement fails the requirements of IDEA. Additionally, Defendant takes the position that the complete absence of "mainstreaming" at Landmark (the practice of educating learning-disabled students alongside their typically-developing peers) also renders it an inappropriate placement under federal standards.

In her conclusions of law, the ALJ found the following factors significant: K.L.'s increased grade equivalent scores in reading; her "academic,... social and emotional progress; and her "increased confidence," culminating in the fact that K.L. applied for and was accepted at several different colleges. Id., Conclusions of Law, ¶ 8. The Court agrees with Parents that the District has made a selective presentation of K.L.'s academic achievements. There is ample evidence her literary skills have advanced to the point where she can independently read and understand adult literature, assigned reading, newspapers and job applications (Id., Findings of Fact, ¶¶ 4-6, 8), and that her writing skills have improved "significantly." Id., ¶ 9.

The District's position that Landmark was an inappropriate placement is further undermined by their use of experts (Pat Turner, a District psychologist, and Dr. Breiger) who either had no direct contact with K.L. (Turner) or had not seen her since November 2005 (Breiger). The opinions of experts lacking in personal contact with a student are afforded less weight than those who have more direct knowledge. Seattle School Dist.v. B.S., 82 F.3d 1493, 1501 (9th Cir. 1996).

And, as Plaintiffs point out, it is the nature of reading instruction at Landmark that the student is continually pushed beyond existing skill levels. The result is that test results will not reflect "real world" abilities since performance levels drop each time skill difficulty is increased. Administrative Record ("AR") 2850:23-2852:25; 2919:14-25.

Nor is the District's "mainstreaming" argument well-taken. Defendant argues that Congress "mandates" student placement in the least restrictive environment and that Landmark is therefore per se inappropriate since mainstreaming is not possible in an environment where there are no "typically developing" students. But the IDEA only requires mainstreaming to the "maximum extent *appropriate*" (20 U.S.C. § 1412(5)(A); 34 CFR § 114(a)) (emphasis supplied). On that basis, it is not out of keeping with the goals of the IDEA to find that a more restrictive environment meets a student's educational needs better than a mainstreamed one. The Court will not disturb the ALJ's finding in this regard.

In the final analysis, two aspects of K.L.'s current situation (as evidenced in her declaration and that of her parents) point toward Landmark as an appropriate placement: (1) her admission to not one, but several, colleges; and (2) the fact that she independently applied for summer jobs in the interim between her senior year and her freshman undergraduate year. Pltf. Reply, Declarations of K.L., M.L. and J.L. Her ability to achieve goals of self-sufficiency, independence and a chance at post-secondary education speaks much louder than any test results; the IDEA goals announced in the Court's previous opinion ("the overarching intent that the student be guided toward self-sufficiency"; Dkt. No. 47, pp. 12-13) have been attained. The Landmark School placement was an appropriate one for this student.

<u>Parents' conduct regarding K.L.'s 10th grade evaluation did not amount to "unreasonable delay"</u>

As a preliminary matter, the Court rejects Parents' argument that the ALJ exceeded her authority in denying a portion of their reimbursement. A re-reading of this Court's earlier order leaves no room for any conclusion other than that the intent was to vest the ALJ with discretion to fashion an appropriate award. ("The exact nature of that relief is best left to the hearing officer with the most direct and extensive acquaintance with the facts and opinions in this case." <u>Id.</u>, p. 13.)

**ORDER ON
MTN FOR JMT - 4**

Despite affirming the ALJ's authority, the Court cannot adopt the ALJ's ultimate result concerning the 7-month "offset." The ALJ's decision to deny Parents a portion of their relief based on a finding of "unreasonable delay" suffers from two defects. First, her conclusions find no corresponding support in her findings. In her Conclusions of Law, the ALJ cited the following reasons for finding the Parents' conduct unreasonable in response to the District's request for a pre-10th grade evaluation of K.L.:

1. Failing to respond to the District's first request for consent "even though the notice sent by the District was appropriate and reasonable."
2. Attempting to limit the evaluation to a review of records only.
3. Withholding consent for almost four months.
4. Delay in making themselves available for the IEP meeting until March 2005.

Dkt. No. 48, Conclusions of Law, ¶ 15.

These conclusions contain no citations to any portion of the record and a search of the Findings of Fact reveals no corresponding factual statements by the ALJ which support her conclusion that Parents behaved unreasonably.

In fact, a review of the entire record does not substantiate the ALJ's conclusions. Based on the record, the chronology of events surrounding K.L.'s evaluation prior to (and eventually during) her 10th grade year unfolded as follows:

1. **June 21, 2004**: Parents wrote to MISD, requesting an independent educational evaluation ("IEE") of K.L., which they had a right to do under 34 C.F.R. § 300.502(e)(2). They identified the evaluator (Dr. Hill) and advised Defendants of the scheduled date of the evaluation. Exh. D229, Vol. V:1111.

2. **June 25, 2004**: The District responded by counter-offering an "IEE" by an evaluator of their choosing. Exh. D229, Vol. V:1112. (No mention was made in this letter of Dr. Hill's unsuitability, although the District claims in a September 3, 2004 letter that they informed Parents that Dr. Hill was not an approved evaluator on June 28, 2004.)

3. Parents went ahead with the Hill IEE at their own expense (Parents claim that the District later reimbursed them for the Hill evaluation. Pltfs. Mtn., p. 5.).

**ORDER ON
MTN FOR JMT - 5**

4. **August 6, 2004**: The District claims (in the September 3 letter) that they received notice on this date that Parents had gone ahead with the Hill evaluation and intended to place K.L. in Landmark.

5. **August 12, 2004**: Ms. Turner, MISD School Psychologist, writes Parents that "[a]s I previously informed you on June 25, 2004, the district is proposing to conduct a *reevaluation* of your daughter..."[1] (emphasis supplied) The letter announces a date, time and place (September 9, 2004, 9:45 a.m., Children's Hospital) for the reevaluation. Exh. D229, Vol. V:1117.

6. **August 24, 2004**: Parents respond to the August 12 letter, enclosing a signed (albeit modified) consent form, pointing out that the District has changed its proposal from "IEE" to "reevaluation" and denying that they refused to consent to a reevaluation of their daughter.

7. **September 3, 2004**: In a letter to Parents (outlining the chronology of events up to that point), the District acknowledges that "CHMRC has agreed to assess Katie no later then [*sic*] the end of September or early October." Exh. D229, Vol. V:1126.

The regulations permitted Parents to request an IEE, and to request that the District pay for it. 34 C.F.R. § 300.502(b). Those same regulations require that an IEE at public expense be conducted by an approved evaluator (34 C.F.R. § 300.502(e)) but also provides that parents may obtain an IEE at their own expense (presumably with any evaluator they choose, although this is not explicitly stated; 34 C.F.R. § 300.502(c)).

The Court has failed to find (and neither the ALJ nor Defendant has provided) any support in the record for the conclusion that the delay in obtaining K.L.'s reevaluation is attributable to unreasonable conduct on Parents' part. The initial delay occurred because the District attempted to ignore a legitimate request by the Parents. When (after delaying a month and a half – June 25 to August 12) the District finally revised their request to something they were entitled to require of the

---

[1] This is a significant rewording of the District's previous language. MISD initially offered an *independent educational evaluation* with an evaluator of their own choosing, ignoring Parents' right to select their own independent evaluator. In this letter, the District changed its proposal to do something which they had a right to do all along – re-evaluate K.L. with an evaluator of *their* choosing. But the District did *not* "previously inform" Parents about the proposed reevaluation on June 25, 2004.

**ORDER ON
MTN FOR JMT - 6**

Parents (a "reevaluation," rather than an IEE), Parents responded relatively promptly with an indication of cooperation.

The record is not clear regarding the reason for pushing the reevaluation into "late September or early October" (Exh. D229, Vol. V:1126.), but no party has submitted any evidence indicating this delay was occasioned by unreasonable delay on the part of Parents. It does appear from the documents available that Parents had insisted on some conditions concerning K.L.'s reevaluation, but neither the ALJ nor the District has provided factual or legal authority for the proposition that Parents had no right to input on how the reevaluation would be conducted.

In any event, what is clear is that, by the time the District was ready to reevaluate her, K.L. was at Landmark pursuing her education. What would be unreasonable (in light of the findings the Court has already made regarding the inadequacy of the minor's education in her 8th and 9th grade years) would be to expect Parents to have kept K.L. in school at MISD awaiting this reevaluation. They have been vindicated in their belief that their daughter was not receiving an appropriate education under Defendant's supervision. The delay created by sending the minor to Landmark is not unreasonable nor attributable in any significant respect to Parents.

Regarding the Parents' alleged delay in making themselves available for the IEP meeting (which did not occur until March 2005), Parents provide uncontroverted allegations and evidence that those delays were primarily attributable to Children's Hospital (which did not issue a report on K.L. until January 2005) and the District (whose staff was not instructed to compile the evaluation data until February 2005), not to them. Pltf. Mtn., p. 6, fn. 14 and 15. In their response, the District does not challenge a single fact alleged by Parents concerning the nature of the IEP meeting delay.

Finding no support in the record for the conclusion that Parents were responsible for any unreasonable delay in evaluating K.L. during her 10th grade year, the Court will not penalize them for

**ORDER ON
MTN FOR JMT - 7**

any delay which did occur. The judgment will reflect an award of reimbursement of the total costs of K.L.'s Landmark enrollment during her 10th and 11th grade years.

<u>Reimbursement of K.L.'s 12th grade enrollment cost is permissible "compensatory education" award</u>

"The court. . . shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). This Court has previously determined that MISD did not afford K.L. a FAPE during her 8th and 9th grade years. Dkt. No. 47, p. 12. The issue remains: how may the minor student be compensated educationally for that loss?

The ALJ concluded that an appropriate compensatory remedy for the loss of two years of required education would be the payment of the enrollment costs of K.L.'s 12th grade year. The District objects to the notion that "placement at Landmark for K.L.'s 12th grade year can serve as compensatory education for a denial of FAPE during K.L.'s 8th and 9th grade years." District's Response, p. 10. The Court finds to the contrary, and holds that payment of K.L.'s 12th grade enrollment costs is permissible as an award of "compensatory education" for the previous failure to provide the minor student with a FAPE.

The District's emphasis on awarding K.L. "placement" at Landmark seems misplaced, as she was already enrolled at the facility. Similarly, Defendants' citation of cases concerned with "award[s] of future tuition during a period of time when an agency is otherwise obligated to provide FAPE" (<u>Manchester Sch. Dist. v. Christopher B.</u>, 807 F.Supp. 860, 869 (D.N.H. 1992)) is of questionable relevance, given that K.L. was no longer in the MISD when she entered her senior year of high school.

Indeed, Parents' move out of the District following K.L.'s 11th grade year means that Defendants were no longer responsible for reimbursing them for any educational placement necessitated by their inability to provide K.L. with a FAPE. But an award of "compensatory education" is not concerned with a district's present obligation to an affected student. As the court stated in <u>Maine Sch. Admin. Distr. No. 35 v. Mr. and Mrs. R.</u>, 321 F.3d 9, 17-18 (1st Cir. 2003), "a

**ORDER ON**
**MTN FOR JMT - 8**

child eligible for special education services under the IDEA may be entitled to further services, in compensation for past deprivations, even after his or her eligibility has expired." Although the Maine court was referring to "eligibility" in the context of the student's age, this Court sees no impediment to extending that rationale to eligibility based on residential factors. See also, Independent Sch. Distr. No. 284 v. A.C., 258 F.3d 769 (8th Cir. 2001) ("The remedy sought is compensatory. It does not matter whether the District has any present or future obligation to develop a new IEP or to give her further hearings."). Under the IDEA, Defendant MISD has an obligation to provide compensatory educational relief to K.L. regardless of where her family is residing.

The purpose of "compensatory education" relief under the IDEA statutory scheme is "to ensure that the student is appropriately educated within the meaning of the IDEA." Parents of Student W v. Puyallup Sch. Distr. No. 3, 31 F.3d 1489, 1497 (9th Cir. 1994). The Court finds that the ALJ's award of K.L.'s 12th grade enrollment costs as compensation for denial of a FAPE for a two-year period accomplishes that goal. The remedy "merely compensates [the minor] for. . . an inappropriate placement. . . and belatedly allows [her] to receive the remainder of [her] free and appropriate public education." Lester H. v. Gilhool, 916 F.2 865, 873 (3rd Cir. 1990).

The District's proposed alternative of "5-18 hours of one-on-one reading instruction" with District tutors (District's Response, p. 11) is wholly insufficient for a deficit created by two years of inadequate education. The fact that K.L. has now graduated from high school and is about to enter college renders the proposal even more inappropriate. Requiring the District to fund the cost of K.L.'s final year of high school is an adequate compensation for their failure to give the minor student the education required by the IDEA for her 8th and 9th grade years.

**Conclusion**

ORDER ON
MTN FOR JMT - 9

1  The placement of the minor student K.L. at the Landmark School was appropriate, and it is apparent that while there she received the necessary support and education to move her closer to the goal of self-sufficiency envisioned by the IDEA. The award of reimbursement of her 10th and 11th grade enrollment costs at the private placement is appropriate and, finding that Parents were not responsible for any unreasonable delays in the pre-10th grade evaluation of K.L., the Court awards them the full amount of those costs. A "compensatory education" award of the costs of the minor student's 12th grade enrollment at Landmark is in keeping with the intention of allowing her to receive the remainder of the free and appropriate public education to which she is entitled, and the Court will so order.

The clerk is directed to provide copies of this order to all counsel of record.

Dated: August __2__, 2007

*[signature]*

Marsha J. Pechman
U.S. District Judge

**ORDER ON**
**MTN FOR JMT - 10**