1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10   J.L., M.L, and K.L., their minor daughter,        CASE NO. C06-494MJP

11                          Plaintiffs,               ORDER ON REMAND: PETITION
                                                      FOR JUDICIAL REVIEW
12              v.

13   MERCER ISLAND SCHOOL
     DISTRICT,
14
                            Defendant.
15

16

17       The above-entitled Court, having received and reviewed

18       1.  Plaintiffs' Opening Brief on Remand (Dkt. No. 76)

19       2.  District's Response on Remand (Dkt. No. 77)

20       3.  Plaintiffs' Reply Brief on Remand (Dkt. No. 78)

21   all attached declarations and exhibits, and having heard oral argument, makes the following

22   ruling:

23

24

ORDER ON REMAND: PETITION FOR
JUDICIAL REVIEW- 1

1    IT IS ORDERED the original decision of the Administrative Law Judge is AFFIRMED;

2    Plaintiffs' request for a declaratory judgment that the minor K.L. was denied a free appropriate

3    education under the Individuals with Disabilities Education Act or state law by Defendant

4    Mercer Island School District is DENIED.

5    **Background**

6    This case concerns the application of the Individuals with Disabilities Education Act

7    (IDEA), 20 U.S.C. § 1400 et seq. and 34 CFR Part 300 et seq., and the implementing state

8    regulations (WAC 392 et seq.).  Plaintiffs appeal from the decision of an Administrative Law

9    Judge (ALJ) that their daughter, K.L., was afforded a "free appropriate public education"

10   (FAPE) by the Individualized Education Programs (IEP's) developed and implemented by

11   Defendant Mercer Island School District (MISD, or the District).

12   The facts as reviewed by this Court are taken from the ALJ's Findings of Fact, found in

13   the Administrative Record (AR) at pages 311-354.  As they have been extensively recited in

14   previous orders of this Court and in the Ninth Circuit opinion in this matter, they will not be

15   repeated here.

16   It is enough to note that events culminated in a request by the Parents that MISD

17   reimburse them for the placement of their daughter in a private school for learning-disabled

18   students (the Landmark School).  That request was initially adjudicated by means of a due

19   process hearing pursuant to 20 U.S. C. § 1415(f).  Following eleven days of testimony and

20   reviewing evidence, the ALJ found that the District had provided K.L. with a FAPE in

21   accordance with the requirements of Rowley; tuition reimbursement was denied.  AR 368-69.

22   Parents thereafter sought review in the district court as permitted by 20 U.S.C. § 1415(i)(2)(A).

23

24

1    This Court initially found in Plaintiffs' favor and remanded to the ALJ with directions to

2    make new findings in accord with the determination that:

3        1. MISD's Individual Education Plans for K.L. were deficient

4        2. K.L. was denied a FAPE for Grades 8 - 10 as a result

5        3. The Individual Disability Education Act (IDEA) requires that the minor receive a

6           "meaningful educational benefit" which envisions post-secondary self-sufficiency.

7    Order on Petition for Judicial Review, Dkt. No. 26.

8        On May 25, 2007, the ALJ issued her Findings of Fact, Conclusions of Law, and Order

9    on Remand.  Dkt. No. 48.  She concluded that K.L.'s placement at the Landmark School was

10   appropriate.  Id., Conclusions of Law, ¶ 8.  For the presentation of inadequate IEPs and the

11   denial of a FAPE in K.L.'s 10th and 11th grade years, the ALJ awarded Parents reimbursement

12   for the cost of K.L.'s 10th and 11th grade enrollment (including residential costs) at Landmark.

13   Id., ¶ 11.   However, that award was reduced by the cost of 7 months' enrollment as an offset,

14   based on the ALJ's conclusion that Parents had unreasonably delayed the District's evaluation of

15   K.L. prior to her 10th grade year.  Id., ¶ 15.   On the issue of "compensatory education," the ALJ

16   awarded Parents the cost of K.L.'s enrollment at Landmark for her 12th grade year based on the

17   denial of a FAPE in the minor student's 8th and 9th grade years.  Id., ¶ 20.

18       Plaintiffs moved for judgment based on the new ALJ ruling.  This Court awarded

19   reimbursement of K.L.'s 10th and 11th grade tuition (with no offset) and further awarded K.L.'s

20   12th grade tuition as compensation for denial of FAPE in her 8th and 9th grade years.  Dkt. No.

21   53.  Parents were also awarded attorney's fees and costs.  Dkt. No. 60.  The District appealed

22   that judgment.  Dkt. No. 61.

23

24

1    The Ninth Circuit overturned this Court's decision.  J.L., et al. v. Mercer Island School

2    District, 592 F.3d 938 (9th Cir. 2010).   The finding of some procedural violations in the

3    preparation and implementation of the IEP's was reversed outright.  The Court of Appeals

4    remanded the remainder of the decision with instructions that this Court "review the ALJ's

5    determination that the District provided K.L. with a free appropriate public education pursuant to

6    the 'educational benefit' standard set forth in Rowley [Board of Education of the Hendrick

7    Hudson Central School District v. Rowley, 458 U.S. 176 (1982)]."  Id. at 953.

8    This order is issued in response to that remand, following briefing and oral argument by

9    the parties on the issues which remain for this Court's determination.

10   **Discussion**

11   The major issue in this case, both in the Court's original rulings and on remand,

12   continues to be the degree of deference to be accorded, not only to the ALJ's findings, but also to

13   the District in its efforts to assess K.L.'s needs and (through the IEP's and the resources of their

14   educational system) to meet those needs in a manner consistent with federal and state

15   requirements.

16   It is clear from the Ninth Circuit's opinion that Rowley is the benchmark by which the

17   District's performance and the Plaintiffs' demands must be measured.  The Supreme Court in

18   that case addressed the issue of how much weight to accord the administrative proceedings, and

19   the rationale for some level of deference:

20          Thus the provision [in the IDEA] that a reviewing court base its decision on the
"preponderance of the evidence" is by no means an invitation to the courts to

21   substitute their own notions of sound educational policy for those of the school
authorities which they review.  The very importance which Congress has attached

22   to compliance with certain procedures in the preparation of an IEP would be
frustrated if a court were permitted simply to set state decisions at nought.  *The*

23   *fact that § 1415(e) requires that the reviewing court "receive the records of the*

24

1
> *[state] administrative proceedings" carries with it **the implied requirement that**
> ***due weight be given to these proceedings**.*

2

458 U.S. at 206 (emphasis supplied).

3

This theme of "deference" is echoed strongly in the Ninth Circuit opinion. In one

4

footnote, the appellate panel observed that:

5

> The parties' arguments throughout this litigation have routinely bordered on the
> quintessential "battle of the experts" concerning what educational policy and
> teaching method is most effective for learning-disabled students. *The District is*
> *entitled to deference in deciding what programming is appropriate as a matter of*
> *educational policy.*

6

7

8

592 F.3d at 945 n. 5 (emphasis supplied).

9

And, while "extreme" deference is not appropriate, neither is *de novo* review. Depending

10

on the state of the record, the ALJ may well be entitled to some level of deference. As the

11

appellate court pointed out:

12

> In IDEA cases, unlike other cases reviewing administrative action, we do not
> employ a highly deferential standard of review. Nevertheless, complete *de novo*
> review "is inappropriate." We give "due weight" to the state administrative
> proceedings." [J.G. v.] Douglas County, 552 F.3d [786] at 793 (*citations omitted*).
> "*We give **particular deference** to 'thorough and careful' administrative findings.*"
> Id.

13

14

15

592 F.3d at 949 (emphasis supplied).

16

This Court was aware of this standard at the time of the original ruling. In the Order on

17

Petition for Judicial Review, it was stated:

18

19

> The deference accorded to the ALJ's decision is based on whether the Court
> deems that the hearing officer's findings are "thorough and careful." (*citation*
> *omitted*). . .

20

21

> The Court would characterize the ALJ's findings in this matter as "thorough, but
> not careful."

22

23

24

1    Dkt. No. 26, pp. 5-6.  And on that basis, very little (if any) deference was given to the ALJ's

2    findings the first time around.  Plaintiffs quote this portion of the original ruling in their opening

3    brief on remand, arguing that nothing has occurred which should alter that perspective.  Opening

4    Brief on Remand, p. 18.  The Court is not persuaded.  The ALJ's findings have already been

5    deemed "thorough."  The label of "not careful" was applied based on the perception that the

6    ALJ, while thorough in marshaling and examining the facts, had gotten the *law* wrong and

7    applied an improper standard to the facts.  It is clear in light of the appellate court's ruling that,

8    in truth, the ALJ was applying the *correct* legal standard.   On that basis, this Court is now

9    disposed to describe the ALJ's findings as both "thorough *and* careful," and therefore hold that

10    those findings are entitled to the "particular deference" to which the Ninth Circuit points.

11        Plaintiffs argue that, even under the Rowley standard, the ALJ's determination that MISD

12    afforded K.L. a FAPE is erroneous.  They present four grounds on which they argue that the

13    ALJ's decision should be overturned.

14        First, Plaintiffs contend that the District's approach favoring accommodation (e.g., note-

15    takers and readers for K.L., extended time for tests, oral exams instead of written) over

16    remediation of K.L.'s learning disabilities violates the IDEA.

17        Neither Rowley nor the cases which follow support this reading of the requirements of

18    the IDEA.  At the outset, the Court observes that the parties disagreed over the nature of K.L.'s

19    disabilities, so it is hardly surprising that they differed over how best to address her

20    circumstances.  As the Ninth Circuit observed, the parties have engaged in an extensive "battle

21    of the experts" throughout this litigation, all centered around the exact nature and extent of

22    K.L.'s disabilities and the best way to address them. As the ALJ and the Ninth Circuit found, the

23

24

1   District is entitled to deference concerning their decision about the appropriate means of

2   providing K.L. with the educational benefit to which she was entitled.  592 F.3d at 945 n. 5.

3       Further, to the extent that "remediation" implies that the District was obligated to bring

4   K.L. up to a reading level commensurate with her peers (or even with K.L.'s own maximum

5   potential), the Rowley court's holding that the IDEA's provision of specialized educational

6   services "generates no additional requirement that the service so provided be sufficient to

7   maximize each child's potential 'commensurate with the opportunity provided other children'"

8   (458 U.S. at 198) would seem to imply the opposite.  The Supreme Court went to say that "to

9   require. . . the furnishing of every special service necessary to maximize each handicapped

10  child's potential is, we think, further than Congress intended to go."  Id. at 199.  Plaintiffs'

11  argument that educational statutory standards cannot be satisfied short of "remediation" is not

12  the state of the law.

13      Plaintiffs also support their "remediation" argument through an interpretation of the

14  language of Rowley and the Ninth Circuit opinion in this matter that mandates a "meaningful"

15  educational benefit from a school district's efforts and equates "meaningful" with "remediated."

16  The issue of the level of benefit required to be conferred by an IDEA program is a controversial

17  one.  Although Rowley does speak of "the educational standard... necessary to make such access

18  [to public education] *meaningful*," (Id. at 192, emphasis added), it neither defines that term nor

19  makes it the sole measure of the adequacy of the educational benefit.  There is also language in

20  Rowley that states that it is "sufficient to confer *some educational benefit*" represented by a

21  "basic floor of opportunity" composed of access to specialized instruction and related services

22  designed to provide the benefit.  Id. at 200 (emphasis added).

23

24

ORDER ON REMAND: PETITION FOR
JUDICIAL REVIEW- 7

1    The Ninth Circuit opinion recognizes that the nature of the IDEA "benefit" is in need of

2  some clarification:

3          Some confusion exists in this circuit regarding whether the Individuals with
          Disabilities Education Act requires school districts to provide disabled students
4          with "educational benefit," "some educational benefit" or a "meaningful"
          education benefit. (*citation omitted*).  As we read the Supreme Court's decision in
5          <u>Rowley</u>, all three phrases refer to the same standard.  School districts must, to
          "make such access meaningful," confer at least "some educational benefit" on
6          disabled students.

7  592 F.3d 938, 951 n. 10.

8          Plaintiffs' interpretation of the mandated educational benefit can be summed up as

9  "'some benefit' can only mean 'meaningful benefit'" (which, in K.L.'s case, means

10  "remediation").  This Court reads the appellate opinion differently.   The guidance provided by

11  the Ninth Circuit in this regard states that "any program which provides 'some benefit' has by

12  definition provided 'meaningful benefit'" and thereby satisfied <u>Rowley</u> and the IDEA.

13          This is a significant distinction.  Plaintiffs come armed with two years of results from the

14  remediation approach employed by the Landmark School, and it is doubtful that even the District

15  would argue that those results are not impressive and meaningful.   But it is the finding of this

16  Court that District's approach of accommodating K.L.'s disabilities (which, as MISD argues and

17  as the ALJ found, produced progress in many areas of K.L.'s education) can be found to have

18  been of "some benefit" to the student even if that benefit is not as great as that which remediation

19  might produce. A finding of "some benefit" qualifies the District's accommodation approach as

20  "sufficient" for IDEA purposes (as the ALJ ruled) and thus a proper component of a FAPE.

21          "Accommodation" as an education technique afforded K.L. some educational benefit and

22  this Court confirms the ALJ's finding that it was consistent with the requirements of the IDEA

23  and <u>Rowley</u>.

24

1      Second, Plaintiffs argue that the failure of MISD's program to educate K.L. up to the

2 level of all of her IEP goals constituted a violation of the IDEA.  Plaintiffs point to K.L.'s failure,

3 in grades 8 and 9, to meet any of her IEP writing objectives and only a portion (3 out of 7) of her

4 reading objectives as proof that the District's efforts fell short of the requirements of the IDEA.

5 They cite the language of the 1997 revision of the IDEA requiring inclusion in the IEP of

6 services sufficient to promote the attainment of the student's goals (20 U.S.C. § 1414(d)(1)(A))

7 and the state law provisions entitling handicapped students to "placement option(s) that provide[]

8 a reasonably high probability of assisting the student to attain his or her annual goals."  WAC

9 392-172-156.

10      To suggest that "failure to attain IEP objectives equals an IDEA violation" is to set the

11 bar on special education far too high.  The Rowley court acknowledged from the outset that

12 "Congress expressly 'recognize[d] that in many instances the process of providing special

13 education and related services to handicapped children is not guaranteed to produce any

14 particular outcome.'" [*citation omitted*].  458 U.S. at 192.  What is required is an ongoing,

15 adaptive effort to set beneficial objectives that will challenge and improve the student, combined

16 with periodic review and revision to ensure those goals are being met or, if met, are being

17 modified to take the student to the next level.

18      It was the finding of the ALJ that the IEP's developed by the District met those criteria.

19 K.L.'s failure in some instances to attain the objectives set in the IEP's is not the test set by

20 Rowley for determining the success of Defendant's efforts.  Her progress, as reflected in her

21 grades and the comments of her teachers and other experts, was found by the ALJ to be adequate

22 to satisfy the requirement that the IEP's and the District's efforts provide her "some educational

23

24

1   benefit." None of the evidence cited by Plaintiffs is sufficient to overcome the "particular

2   deference" to which that finding is entitled.

3          Third, Plaintiffs assert that the MISD program produced no "meaningful educational

4   benefit" for K.L., and thereby violated the IDEA. This interpretation of the requirements of the

5   IDEA has been analyzed above in the context of Plaintiffs' "accommodation v. remediation"

6   argument, but perhaps it bears repeating that the Ninth Circuit, in remanding this case, stated

7   unequivocally that any program which provides "some educational benefit" has provided a

8   "meaningful" benefit by IDEA standards. 592 F.3d 938, 951 n. 10. The ALJ found that K.L.

9   had progressed on a yearly basis through the attainment (or in some cases, near-attainment) of

10  her IEP goals – that finding is entitled to some deference, while at the same time noting that

11  Plaintiffs' argument about why it should be overturned rests on an educational theory which the

12  ALJ also chose not to adopt: namely, that K.L. had a language disorder which could only be

13  remediated by the programs offered at Landmark School.

14         It was the finding of Plaintiffs' expert Dr. Hill that K.L. suffered from a language

15  disorder; that finding was accompanied by an assessment of a mood disorder by the therapist

16  who saw K.L. at Parents' request. The experts from Children's Hospital retained by MISD made

17  contrary findings and also disagreed with K.L.'s parents and Dr. Hill about the most effective

18  way to help K.L. improve in the areas where she showed the greatest deficiency (reading and

19  writing). The ALJ, after hearing all the testimony and reviewing all the evidence, agreed with

20  the District and its experts. Plaintiffs have continued to produce evidence and expert

21  interpretations of that evidence to demonstrate why that decision was erroneous and should be

22  reversed. This Court is mindful of the Ninth Circuit's admonition regarding "the quintessential

23

24

1    'battle of the experts'" and its finding that "[t]he District is entitled to deference in deciding what

2    programming is appropriate as a matter of educational policy."  592 F.3d at 945 n. 5.

3            Plaintiffs' argument that the only meaningful benefit which is cognizable under IDEA is

4    one which remediates the language disorder diagnosed by their experts does not stand up against

5    the deference to which the District's programming and the ALJ's findings are entitled and the

6    fact that there is evidence to support the ALJ's finding that K.L. progressed appropriately under

7    the District's program.  Rowley is clear that district courts are not to substitute their judgment on

8    preferred educational policy for those of the school districts or the state administrative officers.

9    Plaintiffs' "meaningful benefit" argument is not ultimately persuasive in the face of the Supreme

10   Court and Ninth Circuit authority to the contrary, and this Court is not convinced that District's

11   efforts violated the IDEA.

12           Finally, Plaintiffs argue that the IEP's, by virtue of failing to produce "substantive

13   progress" by K.L., were substantively flawed and therefore insufficient by IDEA standards.

14           What is unmistakable about this facet of Plaintiffs' legal theory is that it is premised on

15   the assertion that, in failing to adopt the findings of Plaintiffs' experts regarding the nature of

16   K.L.'s disabilities and accede to Parents' desires regarding how their daughter should be

17   educated, the District failed to accord the student the educational benefit mandated by the IDEA.

18           Plaintiffs cannot prevail on this basis – the Court finds that there was evidence to support

19   both the District's approach to educating K.L. and the ALJ's finding that the District's approach

20   afforded the student a FAPE under the standards set by the IDEA and Rowley.  These findings

21   are entitled to a "particular deference" and Plaintiffs have not overcome the weight of that

22   deference with either their evidentiary support or case authority.

23

24

1   The District's conclusion that K.L. did not have a language disorder of the nature

2   advocated by her Parents is entitled to deference, as is the ALJ's decision to uphold it by giving

3   more credibility to MISD's experts (a finding based in part on the weight which the ALJ chose to

4   accord to the competing experts and in part on the ALJ's own observations of K.L.'s live

5   testimony which was described as "coherent, grammatical, clear, and well organized;" AR 353).

6   Furthermore, as Defendant points out, the ALJ cited ample evidence in support of the finding

7   that K.L.'s reading capabilities, at the time she left the District, were within the average range in

8   every area except reading fluency[1].

9   The evidence and the law not only fail to support Plaintiffs' contention that the District

10  adopted a flawed approach to developing the IEP's and in educating K.L., but further fail to

11  support the contention that the student achieved insufficient progress under the District's care to

12  satisfy the legal requirements.   In contrast to Parents' assertion that their daughter could barely

13  read when she left the District, the ALJ found that K.L. was capable of reading general

14  educational materials, simply at a slower pace than her nondisabled peers.  AR 325.  The finding

15  was supported by evidence.  AR 876, 1640, 1269-71, 3261-62. 3299, 3304, 3363-64, 3373-74.

16  The testing done on K.L. prior to her enrolling in Landmark showed her to be in the average

17  range in four out of five reading components – phonemic awareness, decoding, vocabulary and

18  comprehension (fluency is the fifth).  AR 1221-22, 3075, 3209-11, 3243, 3495-96.  Parents

19  present an impressive amount of evidence regarding K.L.'s learning deficiencies which they

20  claim were not addressed by the District's program; that evidence does not have to be discounted

21  ────────────────

22      [1] Defendant points out that fluency was not even a criterion for determining the existence of a specific
23  learning disability under the IDEA until 2006; i.e., after the events at issue in K.L.'s case.  *Compare* former 34
    C.F.R. § 300.541 (fluency not mentioned as a criterion), *available at* 64 Fed. Reg. 12457, *with* current 34 C.F.R. §
    300.309 (fluency included).

24

ORDER ON REMAND: PETITION FOR
JUDICIAL REVIEW- 12

or invalidated to find that K.L. made progress under the IEP's nevertheless, received "some

educational benefit" under the District's program, and to further find that neither <u>Rowley</u> nor the

IDEA require more than this.

The Court also rejects Plaintiffs' argument that K.L.'s grades cannot be used as

measurement of her progress during the years in question, as well as their contention that

removing her from the society of her non-disabled peers was the only legally-mandated option

for her education.  Again, the District's methodology finds support in <u>Rowley</u>:

> The [IDEA] requires participating States to educate handicapped children with nonhandicapped children whenever possible. . . Regular examinations are administered, grades are awarded and yearly advancement to higher grade levels is permitted for those children who attain an adequate knowledge of the course material.  The grading and advancement system thus constitutes an important factor in determining educational benefit.

458 U.S. at 203.

The Court looks, as did the ALJ, to K.L.'s grades, regular examination, yearly

advancement and "mainstreaming" as further proof of compliance with <u>Rowley</u>.  There was an

abundance of evidence to support the ALJ's findings that K.L.'s grades and yearly advancement

were genuine indications of satisfactory progress through the coursework assigned pursuant to

her IEP's, and the Court notes this as an important factor in finding the District's IEP's to be

legally sufficient and in upholding the administrative determination that the District satisfied its

legal responsibilities to this student.

**Conclusion**

This Court was directed by the Ninth Circuit to "review the ALJ's determination that the

District provided K.L. with education benefit as required by <u>Rowley</u>."  502 F.3d at 941.  The

requirements of <u>Rowley</u> may be summarized as follows:

1

> Insofar as a State is required to provide a handicapped child with a "free appropriate public education," we hold it satisfies this requirement by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction.

458 U.S. at 203.  The evidence and the law support the finding that K.L. was provided with personalized instruction and support services sufficient to permit her to achieve "some educational benefit" from the District's system.  There can be no doubt that the student achieved remarkable progress at the private educational facility to which she was removed and that her potential may have been maximized by her parents' decision to withdraw her from the District. But the law does not place the burden of attaining every student's full potential on the local school districts,  and the administrative finding that the education offered by Defendant MISD comported with the law is affirmed.

The clerk is ordered to provide copies of this order to all counsel.

Dated: October 6, 2010.


Marsha J. Pechman
United States District Judge